# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| ERIK N. SAMPSEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:14-CV-1631 JVB |
| | ) | |
| CITY OF ROCHESTER, OFFICER JESSE M. REASON, and OFFICER EDWARD HAINES, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the motion of Defendants City of Rochester, Jesse Reason, and Edward Haines for summary judgment (DE 47).

**A.  Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the

moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.     Background**

This case arose from the events of February 17, 2013, when Plaintiff Erik Sampsel was stopped by Defendant Jesse Reason, a police officer for the city of Rochester, Indiana. Defendant Ed Haines, also a Rochester police officer, stopped to assist, as did Fulton County Sheriff's deputy Derek Halterman, who is a canine officer in charge of a dog named Timber.[1] The stop resulted in Sampsel's arrest.

Sampsel's complaint alleges claims under 42 U.S.C. § 1893 against defendants Reason and Haines for violating his rights under the Fourth and Fourteenth Amendments to be free from unlawful detention and arrest, unlawful use of force, and malicious prosecution.[2] He also brings

---

[1] The Fulton County Sheriff's Department and Halterman were named as defendants but have settled with Sampsel and have been dismissed from the case.

[2] In his response to Defendants' motion for summary judgment, Sampsel withdrew his § 1983 claims against the City of Rochester. Therefore summary judgment will be granted in favor of the City on that claim.

2

state law claims for battery, false arrest, false imprisonment, and malicious prosecution.

**C.     Facts**

On February 17, 2013, Sampsel was driving home from a date in South Bend, Indiana. He was in Rochester on East Ninth Street where it turns into State Road 14. He had observed a car that he assumed was a police car following him for quite some time before Reason pulled him over. Reason parked his patrol car some distance behind Sampsel's. Although Reason told Sampsel he saw him cross the center line of the road, change lanes without signaling, and perform unsafe lane movements, Sampsel denies all of these behaviors and states that he was driving perfectly, assuming that a police car was behind him. The only evidence of his driving is this contradictory testimony.

Haines joined Reason a short time after Reason stopped Sampsel. Video clips from body cameras Reason and Haines were wearing show some of what happened after Sampsel was pulled over. The clips show Reason administering field sobriety tests to Sampsel. Sampsel started the heal to toe walk-and-turn several times before Sampsel wanted him to, but Reason's instructions were confusing: he did not explain to Sampsel that he was to wait to hear all the instructions and that Reason would tell him when to start the test. Reason also performed a horizontal gaze nystagmus test on Sampsel. On the basis of these tests he concluded that Sampsel was intoxicated.

During the field sobriety tests, Halterman arrived on the scene with his dog. One of the other officers asked him to have the dog sniff around Sampsel's car. While Halterman was walking his dog around the car, Reason searched Sampsel, with his consent. Halterman informed

3

the other officers that the dog had alerted by the car, whereupon Halterman and Reason began searching the inside of the car while Haines stayed with Sampsel. When Sampsel saw what Halterman and Reason were doing, he pointed out to Haines that he had told them they couldn't search the car. Haines explained that the dog had alerted to the vehicle. When Sampsel asked whether there was a warrant for the search, Haines told him that the dog's alert gave them probable cause to search the car without a warrant. Sampsel asked if the dog indicated on the car, to which Haines replied that he hadn't watched the dog and didn't know.[3]

Sampsel then spoke to the searchers, telling them he hoped they had a warrant. He told them he wanted to talk with them, left his position at the front of Reason's patrol car where he had been told to stand, and began walking toward his car and the searchers. Halterman told Sampsel to stand back by the patrol car. The video clip shows Halterman aggressively approaching Sampsel as Sampsel walked a few steps backward and started to turn to the side, seemingly complying with Halterman's order. Halterman testified that he gestured with his hand to guide Sampsel back to Reason's patrol car and ordered him to return but that Sampsel refused to comply, slapping Halterman's hands away, to which Halterman responded by placing him on the patrol car. But according to Sampsel, Halterman grabbed him with both hands and forcibly placed him on the car. The video clip does not show what either man was doing with his hands before Halterman shoved Sampsel onto the patrol car. A scuffle ensued. It is impossible to tell from the video clip exactly what happened next, but Sampsel testified that both Haines and Reason punched him in the face, although Reason claims he became involved only after Haines had Sampsel under control. Haines admits to having punched him with a closed fist to the back

---

[3]In his deposition, Sampsel testified that he did not see what Halterman did with his dog and that he didn't remember ever seeing the dog.

of his head. Sampsel admits to flailing his arms, which could have been interpreted as resisting, and admits that his hand coming into contact with Haines's face could have been interpreted as intentional, but drawing all reasonable inferences in his favor, the flailing and face strike didn't occur until after Halterman shoved him. Ultimately, the officers gained control of Sampsel and he was placed in handcuffs.

In their search of Sampsel's car, Reason and Halterman found a number of pills that were not in a labeled prescription container. The pills turned out to be the controlled substance Clorazepate, for which Sampsel had a prescription.

Officer Reason issued citations to Sampsel for driving left of center, which was later dismissed, and failing to signal a lane change. Officer Reason also charged Sampsel with operating a vehicle while intoxicated, two counts of battery on a law enforcement officer, and misdemeanor resisting law enforcement, but the Fulton County prosecutor "declined to charge Mr. Sampsel on any of these charges." (DE 10, Plaintiff's complaint and Defendants' answer, ¶ 46). More than a month later, on the basis of Officer Reason's affidavit, the Fulton County prosecutor charged Sampsel with felony possession of the controlled substance Clorazepate. However, after Sampsel proved he had a valid prescription for the substance, the Fulton Superior Court dismissed the charge.

### D. Discussion

**(1)** *False Arrest Claim under § 1983*

Plaintiff claims that by stopping him for traffic violations he did not commit and arresting him for operating a vehicle while intoxicated, resisting arrest, and battery on law enforcement

officers, Reason and Haines violated his Fourth Amendment right to be free from unreasonable seizures. "False arrest" is shorthand for an unreasonable seizure prohibited by the Fourth Amendment. *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012). Reason and Haines maintain that they had probable cause to arrest him for each of these charges, as well as possession of a controlled substance.

Probable cause is an absolute defense to a claim of wrongful arrest under § 1983. *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). A law enforcement officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge would allow a prudent person to conclude that the suspect had committed, was committing, or was about to commit an offense. *Id.* The probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. *Id.*

In this case there is room for differing conclusions as to whether probable cause existed for any of the offenses Reason and Haines claim justify Sampsel's arrest. Reason maintains he pulled Sampsel over because he saw him cross the center line of the road, change lanes without signaling, and perform unsafe lane movements, all of which Sampsel denies. If a jury believes Sampsel, no probable cause existed to initiate the traffic stop. Reasonable people viewing the video of the incident could conclude that Sampsel adequately performed the field sobriety test in light of Reason's confusing instructions and that he was not acting like an intoxicated person. Similarly, reasonable people viewing the video and considering Sampsel's testimony could find that Sampsel was not resisting arrest but attempting to obey Halterman's command when Halterman shoved him and that Reason and Haines knew this when they joined the fray.

6

Reasonable people could also conclude, viewing the evidence in the light most favorable to Sampsel, that he was merely defending himself by flailing at the officers, not committing battery on them. With respect to the charge of possession of a controlled substance, reasonable people could determine that simply finding pills that were not in a container does not constitute probable cause to arrest on that charge when the nature of the pills was not known at the time of Sampsel's arrest.

Reason and Haines contend that even if they lacked probable cause to arrest Sampsel, they are entitled to qualified immunity on his false arrest claims. Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015). However, if Sampsel's version of events is accepted and all reasonable inferences are drawn in his favor, Reason and Haines could not have reasonably believed they had probable cause to arrest him for any of the charges listed above. Accordingly, the Court rejects their qualified immunity defense to Sampsel's false arrest claims.

**(2)** *Excessive Force Claim under § 1983*

It is clearly established that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir 1996). Crediting Sampsel's testimony and viewing the video in the light most favorable to him, a jury could find that Reason and Haines joined in Halterman's unprovoked assault on him as he was attempting to comply with Halterman's order to get back to the car. Accordingly, it cannot be said that the amount of force used against him was reasonable

7

as a matter of law or that Reason and Haines are entitled to qualified immunity. Therefore summary judgment will be denied on this claim.

**(3)** *Malicious Prosecution Claim under § 1983*

The law in the Seventh Circuit is sparse on what the contours of a malicious prosecution claim under § 1983 are. However, at a minimum, a plaintiff must state a constitutional violation independent of an alleged wrongful arrest. He must present evidence that defendants maliciously initiated a baseless criminal prosecution against him that deprived him of liberty and that the deprivation occurred after arraignment. *Serino v. Hensley*, 735 F3d 588, 594–95 (7th Cir. 2013).

In defense of his malicious prosecution claim, all Sampsel argues is that he believes he has a valid claim and that he incurred substantial economic and non-economic harm from having to suffer the prosecution of a criminal case without merit. However, having to defend against the charges before they were dismissed does not establish a liberty deprivation. *Id.* at 594. Furthermore, Sampsel doesn't even allege that Reason or Haines maliciously instituted a criminal prosecution, let alone present evidence to support such a claim. Accordingly, the Court grants Defendants' motion for summary judgment on his § 1983 malicious prosecution claim.

**(4)** *State Law Claims for Battery, False Arrest, False Imprisonment and Malicious Prosecution*

With regard to Sampsel's state law claims for battery, false arrest, and false imprisonment, the Court concludes that Reason and Haines individually are immune from suit

under the Indiana Tort Claims Act (ITCA). Indiana Code § 34-13-3-5(b) provides in relevant part: "A lawsuit alleging that an employee [of a governmental entity] acted within the scope of the employee's employment bars an action by the claimant against the employee personally." While Sampsel's complaint does not allege in so many words that Reason and Haines were acting within the scope of their employment, it does allege facts that establish they were so acting when the events giving rise to Sampsel's claims occurred. Moreover, Sampsel has presented no evidence to suggest otherwise.

With regard to Sampsel's state law battery claim, it is clear that Defendant City of Rochester is not immune from liability for Reason and Haines's alleged use of excessive force. *See Wilson v. Isaacs*, 929 N.E.2d 200, 203–4 (Ind. 2010). Neither is the City immune from claims that Reason and Haines's conduct amounted to false arrest or false imprisonment. *See* Code § 34-13-3-3(8). Accordingly, Sampsel may proceed on these claims against the City.

Sampsel has conceded that he has no state law claim for malicious prosecution. Accordingly, summary judgment will be granted as to that claim.

**(E)    Conclusion**

For the reasons stated above, Defendants' motion for summary judgment (DE 47) is GRANTED in part and DENIED in part. It is GRANTED with respect to Plaintiff's § 1983 claim for malicious prosecution, his state law claims against Reason and Haines individually, and his state law claim against the City of Rochester for malicious prosecution. It is GRANTED with respect to his § 1983 claims against the City of Rochester. In all other respects it is DENIED.

SO ORDERED on May 11, 2016.

                                                    s/ Joseph S. Van Bokkelen  
                                                    Joseph S. Van Bokkelen  
                                                    United States District Judge  
                                                    Hammond Division